IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| vs. | ) | CR. NO.: 3:21-cr-00023-JFA-1 |
| **CHRISTINA ANDERSON** | ) | |

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| vs. | ) | CR. NO.: 3:21-cr-00024-JFA-1 |
| **HENRY BARTON** | ) | |

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| vs. | ) | CR. NO.: 3:20-cr-00586-JFA-1 |
| **JEFFREY HOFFMAN** | ) | |

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| vs. | ) | CR. NO.: 3:19-cr-00277-JFA |
| **HERB KIMBLE** | ) | |

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| vs. | ) | CR. NO.: 3:20-cr-00583-JFA-2 |
| **STEVE LOWELL** | ) | |

| UNITED STATES OF AMERICA | ) |  |
|---|---|---|
|  | ) |  |
| vs. | ) | CR. NO.: 3:20-cr-00591-JFA |
|  | ) |  |
| **DAVID TSUI and COMFORTLAND INTERNATIONAL LLC** | ) |  |

| UNITED STATES OF AMERICA | ) |  |
|---|---|---|
|  | ) |  |
| vs. | ) | CR. NO.: 3:20-cr-00592-JFA-1 |
|  | ) |  |
| **KATHRYN VANRAVENSTEIN** | ) |  |

**JOINT MOTION TO APPLY CORRECT SENTENCING GUIDELINE, SECTION 2B4.1, AND PROPERLY CALCULATE LOSS AMOUNT**

The United States of America and the above-named Defendants jointly move this Court to apply the proper United States Sentencing Guideline, § 2B4.1, when sentencing the above-named Defendants.

**PROCEDURAL HISTORY**

From on or about March 2019 through January 2021, the United States of America filed Informations and plea agreements in the above-captioned cases for violations relating to a conspiracy under 18 U.S.C. § 371 to defraud health care programs by offering remuneration, specifically kickbacks, to induce a person to refer an individual to a person for an item or service for which payment may be made under a federal healthcare program.

The United States Probation Office ("USPO") has prepared Presentence Investigation Reports ("PSRs") in advance of several of the Defendants' sentencing.[1] The Government and

---

[1] As of the date of filing this Motion, no sentencing hearings have been scheduled. Given the ongoing discussion with the USPO, the Government has taken and maintains the position that none of the PSRs are final. Further, no PSR has been issued for Christina Anderson and Henry Barton.

defense counsel file this motion after email correspondence and meetings wherein the Government has endeavored to work with the USPO to explain the Government's position, outline what the Government is able to prove, and discuss the agreement of *all* parties to the above-referenced cased as to the applicable law and loss amounts.[2]

## FACTUAL BACKGROUND

A review of the Informations, and the factual statements during the plea hearings, evidence that the overall scheme alleged is a health care fraud conspiracy to defraud Medicare by way of an illegal kickback structure. Here, the primary statute relevant to the conspiracy is 42 U.S.C. § 1320a-7b. *See* Hoffman PSR at 4; Kimble PSR at 4; Lowell PSR at 4; Tsui PSR at 4; Comfortland PSR at 4; VanRavenstein PSR at 4 (all quoting from the Informations, listing the details of the conspiracy, and referencing 42 U.S.C. §§ 1320a-7b(b)(2)(A), (B)). That statute prohibits, in pertinent part:

**(b) Illegal Remunerations**

. . .

>   **(2)** Whoever knowingly and willfully offers or pays any remuneration (including any kickback, bribe, or rebate) directly or indirectly, overtly or covertly, in cash or in kind to any person to induce such person –
>
>>   **(A)** to refer an individual to a person for the furnishing or arranging for the furnishing of any item or service for which payment may be made in whole or in part under a Federal health care program, or
>>
>>   **(B)** To purchase, lease, order, or arrange for or recommend purchasing, leasing, or ordering any good, facility, service, or item for which

---

[2] The Government and defense counsel in a related case, *United States v. Chmiel et al.*, No. 3:19-cr-00299-JFA, have filed a substantively similar motion. As noted herein, the parties believe the joint nature of this motion would allow for it to be granted without a hearing in these cases. Should the Court require a hearing, the parties would ask that a joint hearing be held with all parties as these issues exist across several cases. To the extent necessary, and with consent of all parties, the Government would also request that this motion be treated as joint objections to the PSRs in these cases.

>payment may be made in whole or in part under a Federal health care program, . . . .

The scheme used various call centers to recruit beneficiaries, and the initial call center was tied to commercials targeting Medicare beneficiaries with promises of low-to-no-cost Durable Medical Equipment ("DME"), which were braces; or in the case of Hoffman, the promise was for low-to-no-cost genetic testing. Once a beneficiary called the number provided on the advertisement, their personal information would be obtained and then the beneficiary would be sent to a telemedicine company. The telemedicine company would arrange for a doctor to sign a prescription and send it to the call center.

For braces, the entire packet, called a completed doctor's order, would then be sold to a DME company. The DME company in turn billed Medicare for the brace. The call center would then pay for a brace to be sent to the beneficiary from a drop-ship company that contracted with manufacturers.[3] The fee per completed doctor's order was described on invoices as payment for marketing and processing instead of payment for a beneficiary's information. These deceptive invoices were utilized to conceal the kickback nature of the agreements. The scheme worked effectively the same for genetic testing. Put simply, the scheme involved purchasing patients and signed prescriptions for DME companies. The purchased patients and prescriptions were used to bill Medicare for DME and health screenings, which were provided to the beneficiaries.

An analysis of the facts indicates that the primary illegal activity in the conspiracy relates to a violation of the Anti-Kickback Statute – 42 U.S.C. § 1320a-7b(b). These Defendants offered or received payments, including kickbacks, to various individuals and companies, which resulted

---

[3] Drop-ship companies were not used in all cases though that did not fundamentally alter the gravamen of the overall scheme.

4

in the selling of a completed doctor's order to a DME company. By violating the Anti-Kickback Statute, these Defendants committed health care fraud.

## ARGUMENT

The Guidelines require the sentencing court to "[d]etermine the offense guideline section . . . applicable to the offense of conviction (i.e., the offense conduct charged in the count of the indictment or information of which the defendant was convicted)." U.S.S.G. § 1B1.2; *see United States v. Lambert*, 994 F.2d 1088, 1091 (4th Cir. 1993). The applicable guideline generally is found in the Statutory Index to the Guidelines (Appendix A). *See* U.S.S.G. § 1B1.2(a).

Chapter 2B of the Guidelines addresses Basic Economic Offenses and covers a range of activities. Importantly, the Guidelines recognize that economic offenses are more nuanced than, for example, drug cases:

> Because federal fraud statutes often are broadly written, a single pattern of offense conduct usually can be prosecuted under several code sections, as a result of which the offense of conviction may be somewhat arbitrary. Furthermore, most fraud statutes cover a broad range of conduct with extreme variation in severity. The specific offense characteristics and cross references contained in this guideline are designed with these considerations in mind.

U.S.S.G. § 2B1.1, Background.

The conspiracy and scheme in which these Defendants participated is unlike any case this Court has seen and it cannot be compared to a typical fraud or drug case. As is discussed in more detail below, the essence of the illegal activity in which these Defendants participated, as described in the filed Informations, is a violation of 42 U.S.C. § 1320a-7b(b). As a result, § 2B4.1 is the most applicable Guideline.

### A. § 2B4.1 is the most applicable Guideline to the kickback scheme at issue in the present case.

At the outset, the parties acknowledge that the Appendix A lists two applicable Guidelines for the Anti-Kickback Statute – 2B1.1 and 2B4.1. These Guidelines are substantially different. Section 2B1.1 applies to "Theft, Embezzlement, Receipt of Stolen Property, Property Destruction and Offenses Involving Fraud or Deceit." Section 2B4.1, on the other hand, applies to "Commercial Bribery and Kickbacks."

The reason for Appendix A's inclusion of both Guidelines is apparent when 42 U.S.C. § 1320a-7b is read as a whole. Subsection (a) of that statute prohibits "[m]aking or causing to be made false statements or representations" in connection with obtaining benefits or payments under Federal health care programs. Put simply, subsection (a) criminalizes obtaining benefits or payments from federal payors, like Medicare, when an individual is not entitled to those benefits or payments. *See* 42 U.S.C. § 1320a-7b(a). In the present case, the Informations specify that the Defendants were charged with a § 371 conspiracy related to subsection (b) of 42 U.S.C. § 1320a-7b, which relates to receiving kickbacks, bribes, or rebates.[4]

The relevant case law supports the conclusion that § 2B4.1 is the most applicable guideline:[5]

---

[4] The Informations do reference 18 U.S.C. § 1347, which is governed by § 2B1.1. As addressed in the Background to Chapter 2B, the "offense of conviction may be somewhat arbitrary." Moreover, § 1347 is mentioned in one paragraph in the respective Informations, while the anti-kickback statute—42 U.S.C. § 1320a-7b—is mentioned in two paragraphs. That is one illustration of how this case has been prosecuted as a kickback case.

[5] The commentary to § 2B4.1 provides that it "covers commercial bribery offenses and kickbacks that do not involve *officials* of federal, state, or local government." U.S.S.G. § 2B4.1 cmt. n.1 (emphasis added). Similarly, the background comments to § 2B4.1 state that it "applies to violations of various federal bribery statutes that do not involve governmental officials." U.S.S.G. § 2B4.1 cmt. background.

6

- In *United States v. Starks*, 157 F.3d 833 (11th Cir. 1998), one of the defendants entered into a contract with Medicaid to run a chemical dependency unit in exchange for a share of the hospital's profits earned from the program. *Starks*, 157 F.3d at 835. The defendant unlawfully paid state employees working in a federally funded program to refer patients to the chemical dependency unit. The defendant was convicted of violating 42 U.S.C. § 1320a-7b and sentenced under the fraud guideline, which at the time was § 2F1.1 but has since been merged with § 2B1.1. *Id*. at 841. The Government appealed, arguing that he should have been sentenced under § 2C1.1, the guideline for bribing public officials, even though that guideline was not listed in the appendix. *Id*. The court agreed, concluding that the fraud guideline was not applicable because the defendant did not steal from the Government or file false Medicaid claims, "but rather engaged in a kickback scheme that corrupted [the federally funded program's] referral process." *Id*. The court further noted that "[i]f [the recipients of the kickbacks] were bribed but were not public officials, then § 2B4.1 (commercial bribery) would have applied." *Id*. at 842 n.14.

- In *United States v. Valladares,* 544 F.3d 1257 (11th Cir. 2008), the defendant was convicted of paying renumeration to Medicare beneficiaries and doctors so that she could obtain prescriptions that allowed pharmacies to submit fraudulent Medicare reimbursement claims. On appeal, the defendant argued the district court incorrectly applied the commercial bribery guideline (§ 2B4.1) rather than the fraud guideline (§ 2B1.1) in determining the base offense level used in calculating her sentence. The circuit court, however, found support for use of the commercial bribery guideline.

- In *United States v. Ricard*, 922 F.3d 639 (5th Cir. 2019), the defendant was convicted of a kickback conspiracy related to payments to refer patients to certain providers. The circuit court found that the district court's application of § 2B4.1 was appropriate.

- In *United States v. Poirier*, 321 F.3d 1024 (11th Cir. 2003), the court addressed whether to apply the § 2F1.1 fraud guideline or the § 2B4.1 commercial bribery guideline to the defendant's wire fraud conviction. *Id.* at 1034. In that case, Fulton County had hired one of the defendants to provide fair and disinterested assistance in selecting an underwriter, but the defendant instead sold confidential documents to his codefendant to help the codefendant's firm succeed in the selection process. *Id*. The court concluded that "the defendants' 'conduct more closely resembled a fraud achieved through bribery than a straight fraud,' and for that reason the § 2B4.1 guideline applies." *Id*. (citation omitted).

The clear purpose of the Anti-Kickback Statue is to ensure that doctors and providers make decisions on medical bases as opposed to business interests. A byproduct of kickbacks is that when decisions are based upon a business interest as opposed to a medical basis there will be billing for medically unnecessary services; that is true here.

In the present case, the gravamen of the scheme involves these Defendants receiving payment in exchange for their role in facilitating prescription and billing. The key factor in determining that § 2B4.1 is the most applicable guideline is that the beneficiaries received the braces or screenings for which Medicare was billed. As a result, this is not a case of billing for goods or services not provided, but rather is a case of a kickback scheme. As the case law cited above demonstrates, application of § 2B4.1 is appropriate and § 2B4.1 should be applied when sentencing these Defendants.

> **B.     The Presentence Investigation Report's reliance on § 2B1.1 is legally and factually unsound.**

Section 2B1.1 is titled "Larceny, Embezzlement, and Other Forms of Theft; Offenses Involving Stolen Property; Property Damage or Destruction; Fraud and Deceit; Forgery; Offenses Involving Altered or Counterfeit Instruments Other than Counterfeit Bearer Obligation of the United States." The section's own commentary and case law indicate that it is not the appropriate Guideline for all economic crimes. "The Sentencing Commission is clearly aware that different types of fraud may call for different methods of calculation." *United States v. Orton*, 73 F.3d 331, 333 n.4 (11th Cir. 1996). Courts have recognized that "while § 2F1.1 (§ 2B1.1 currently) sets forth the general framework for calculating loss," *id.*, the sentencing court "must consider the nature of the scheme in determining what method is to be used to calculate the harm caused or intended." *Id.* at 333.

In the PSRs that have been filed to date, the USPO has used Appendix A to determine that the Guideline section for a violation of 18 U.S.C. § 371 is § 2X1.1. Section 2X1.1(a) sets forth that the base offense level is determined by reference to "the base offense level from the guideline for the substantive offense, plus any adjustments from such guideline for any intended offense conduct that can be established with reasonable certainty." The USPO determined that the

8

substantive offense is fraud and, as a result, used § 2B1.1 to calculate the respective Defendants' base offense level.

As the Guidelines state, and case law indicates, § 2B1.1 is not the correct Guideline for all economic crimes. The Court need not look any further than the PSRs, which extensively set forth the complexity and nature of the conspiracy and scheme. Further, all parties agree that the nature of the scheme is that of a kickback, not of "Larceny, Embezzlement and Other Forms of Theft." *See* § 2B1.1.[6] The most glaring fact to support the position of the United States and the Defendants is that the goods for which Medicare was billed were sent to the beneficiaries. As a result, there was no theft. Furthermore, the Defendants' cases were resolved on pleas to Informations with early pleas based on a more limited investigation because these Defendants immediately began cooperating and agreed to admit their wrongdoing. Over 100 terabytes of evidence have been collected in this case, which translates to decades if not centuries of recordings, and numerous other records in the case. The Government does not have the resources to listen to and evaluate with an expert each individually billed patient. Moreover, as the evidence supports the parties' unanimous agreement that this conspiracy is more aptly analyzed under § 2B4.1, such an analysis is not needed. The essence of the scheme is the purchasing of completed doctor's orders from an offshore call center, which is a kickback.

      **C.**      **The Presentence Investigation Reports' loss amount is incorrect.**

Guideline § 2B4.1 directs that, when the improper benefit conferred exceeds $6,500, the Court should "increase by the number of levels from the table in § 2B1.1 (Theft, Property Destruction, and Fraud) corresponding to that amount." In order to determine the value of the

---

[6] Alternatively, if the Court finds § 2B1.1 applicable, the facts of this case dictate that § 2B4.1 should be cross-referenced. *See* U.S.S.G. § 2B1.1(c)(3).

improper benefit conferred, we must look at the benefit that each Defendant *received* from his role and involvement in the kickback scheme at issue.[7]

Further evidence that the PSR's loss amount is incorrect is the fact that many beneficiaries received the braces or screenings for which Medicare was billed. In the commentary to § 2B1.1, the following is set forth:

> In a case in which the defendant is convicted of a Federal health care offense involving a Government health care program, the aggregate dollar amount of fraudulent bills submitted to the Government health care program shall constitute prima facie evidence of the amount of the intended loss, i.e., is evidence sufficient to establish the amount of the intended loss, *if not rebutted*.

§ 2B1.1, cmt. n.3 (F)(viii) (emphasis added).

The presumed calculation of intended loss is rebutted here. As set forth above, the kickback scheme was unlawful because of the manner in which the procurement occurred, but it did result in braces and screenings being provided to beneficiaries, many of whom were entitled to them. Not every dollar billed to Medicare was fraudulent, and the PSRs' reliance on § 2B1.1, Application Note 3(F)(viii) to equate the Medicare billing amounts with the intended loss amounts is misplaced.

## CONCLUSION

As set forth above, the parties move this Court to apply Guideline § 2B4.1 when sentencing the above-named Defendants. Further, the parties move this Court to calculate the loss amount based on the amount the respective Defendants derived from the kickback scheme, not the gross amount billed to a federal health care program. Further, the parties believe that given the joint

---

[7] In the event the court finds that § 2B1.1 applies, the parties contend that the proper loss amount is the amount derived by the kickback scheme, not the gross amount billed to a federal health care program.

nature of this motion a hearing is unnecessary in order for the Court to grant this motion.[8] Should the Court require a hearing, the parties would request that the Court hold a hearing with all related parties as this issue affects an array of cases.

---

[8] The Fourth Circuit in *United States v. Freeman*, 992 F.3d 268 (4th Cir. 2021), *reh'g en banc granted*, 2021 WL 1853339 (4th Cir. May 7, 2021), recently vacated a 17-year sentence for opioid distribution in part because trial counsel was ineffective for failing to lodge a meritorious objection to the PSR's calculated drug weight. The Government was able to present evidence regarding the number of prescriptions filled by the defendant based on statements made by the defendant. *Id.* at 273. However, the probation officer determined that the number of pills was higher based on the officer's review of the discovery, not based on the defendant's proffer. *Id*. Although neither the Government nor the defense counsel objected, the Fourth Circuit ruled that the defendant's counsel was ineffective on direct appeal for failing to raise a "meritorious" objection to the drug weight. *Id.* at 275. Although *Freeman* has been selected for *en banc* review and is thus not binding on this Court, it underscores the solemn obligation the Government, defense counsel, and the Court have to carefully scrutinize a PSR's calculations, particularly where they do not align with the case the Government has represented it could prove at sentencing.

The Government, after investigating and prosecuting this incredibly complex and nuanced conspiracy for more than four years, and the various defense attorneys who have combed over data and governing legal authority, uniformly disagree with the PSRs and are in agreement that the correct loss amount is the benefit received by the Defendants.

Respectfully submitted,

M. RHETT DEHART
ACTING UNITED STATES ATTORNEY

*s/ Derek A. Shoemake*
Derek A. Shoemake (Fed. Id. # 10825)
Assistant United States Attorney
U.S. Attorney's Office
401 W. Evans Street, Room 222
Florence, SC 29501
Tel. (843) 667-3992
Derek.Shoemake@usdoj.gov

*s/Amy F. Bower*
Amy F. Bower (Fed. Id. # 11784)
Assistant United States Attorney
U.S. Attorney's Office
151 Meeting Street, Suite 200
Charleston, SC 29401-2238
Tel. 843-727-4381
amy.bower@usdoj.gov


COUNSEL FOR CHRISTINA ANDERSON

*s/ John A Fagg , Jr.*
John A Fagg , Jr
Moore and Van Allen PLLC
Bank of America Corporate Center
100 N Tryon Street, Suite 4700
Charlotte, NC 28202-4003
704-331-3622
Fax: 704-378-2092
Email: johnfagg@mvalaw.com

*s/ William Glenn Yarborough , III*
William Glenn Yarborough , III
William G. Yarborough III Attorney at Law LLC
308 West Stone Avenue
Greenville, SC 29609
864-331-1612
Fax: 864-271-0711
Email: wgyarborough@gmail.com

COUNSEL FOR HENRY BARTON
*s/ J. Robert Bolchoz*
J. Robert Bolchoz
1901 Assembly Street, Suite 300
Columbia, SC 29201
803-799-4000
Fax: 803-799-7083
Email: robert@bolchoz.com

*s/ James Franklin Herbison*
James Franklin Herbison
Winston and Strawn
35 West Wacker Drive
Chicago, IL 60601
312-558-5600
Fax: 312-558-5700
Email: jherbison@winston.com

COUNSEL FOR JEFFREY HOFFMAN

*s/ Frank Langston Eppes*
Frank Langston Eppes
Eppes and Plumblee
PO Box 10066
Greenville, SC 29603
864-235-2600
Fax: 864-235-4600
Email: frankeppes@mindspring.com


[**Signatures continued on next page**.]

| | |
|---|---|
| COUNSEL FOR HERB KIMBLE | COUNSEL FOR DAVID TSUI |

COUNSEL FOR HERB KIMBLE

*s/ James Mixon Griffin*
James Mixon Griffin
Griffin Davis LLC
4408 Forest Drive, Suite 300
Columbia, SC 29206
803-744-0800
Fax: 803-744-0805
Email: jgriffin@griffindavislaw.com

*s/ Margaret Nicole Fox*
Margaret Nicole Fox
Griffin Davis LLC
4408 Forest Drive, Suite 300
Columbia, SC 29206
803-744-0800
Fax: 803-744-0805
Email: mfox@griffindavislaw.com

COUNSEL FOR STEVE LOWELL

*s/ William Norman Nettles*
William Norman Nettles
Bill Nettles Law
2008 Lincoln Street
Columbia, SC 29201
803-814-2826
Fax: 888-745-1381
Email: bill@billnettleslaw.com

*s/ John LaFitte Warren , III*
John LaFitte Warren , III
Law Office of Bill Nettles
2008 Lincoln Street
Columbia, SC 29201
803-592-9097
Email: jw@billnettleslaw.com

COUNSEL FOR DAVID TSUI

*s/ Andrew Burke Moorman*
Andrew Burke Moorman
Moorman Law Firm LLC
416 East North Street, 2nd Floor
Greenville, SC 29601
864-775-5800
Email: andy@andymoormanlaw.com

*s/ David William Long*
David William Long
Poyner Spruill LLP
PO Box 1801
Raleigh, NC 27602
919-783-2808
Fax: 919-783-1075
Email: dwlong@poynerspruill.com

COUNSEL FOR COMFORTLAND
INTERNATIONAL LLC

*s/ Andrew Burke Moorman*
Andrew Burke Moorman
Moorman Law Firm LLC
416 East North Street, 2nd Floor
Greenville, SC 29601
864-775-5800
Email: andy@andymoormanlaw.com

*s/ Joseph Edward Zeszotarski , Jr.*
Joseph Edward Zeszotarski , Jr.
Gammon Howard and Zeszotarski PLLC
PO Box 1127
Raleigh, NC 27602
919-521-5878
Fax: 919-882-1898
Email: jzeszotarski@ghz-law.com

[**Signatures continued on next page**.]

COUNSEL FOR KATHRYN VANRAVENSTEIN

*s/ Ivon Keith McCarty*
Ivon Keith McCarty
McCarty Law Firm
1212 Wappoo Road
Charleston, SC 29407
843-793-1272
Email: ikeithmccarty@gmail.com

October 5, 2021